UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LISA A. TOWERS

       Plaintiff,

    v.                              **REPORT AND RECOMMENDATION**
                                      **09-CV-00070 (GTS)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

       Defendant,

## I.    Introduction

In June 2005, Plaintiff Lisa A. Towers, filed an application for Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). Plaintiff alleges she has been unable to work since May 1, 2004, due to various mental impairments as well as obesity, asthma, back pain, and neck pain. The Commissioner of Social Security ("Commissioner") denied Plaintiff's application.

Plaintiff, through her attorneys, the Legal Services of Central New York, commenced this action on January 20, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On April 1, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 19).

1

## II. Background

The relevant procedural history may be summarized as follows: Plaintiff initially applied for SSI on June 9, 2005, alleging a disability beginning on May 1, 2004 (R. at 64).[1] Plaintiff alleged disability due to anxiety disorders, panic attacks, depression, obesity, asthma, back pain, and neck pain. The application was denied (R. at 38-40). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") (R. at 42). A hearing was held in Syracuse, New York, on June 28, 2007, before ALJ Robert E. Gale (R. at 435-64). Plaintiff, represented by a paralegal,[2] appeared and testified (R. at 439-61). On August 23, 2007, ALJ Gale issued a decision finding Plaintiff not disabled (R. at 26-36). Plaintiff filed a request for review of that decision (R. at 22). The ALJ's decision became the Commissioner's final decision on November 17, 2008, when the Appeals Council denied Plaintiff's request for review (R. at 6-9).

Plaintiff, through counsel, timely commenced this action on January 20, 2009. (Docket No. 1). The Commissioner interposed an Answer on June 17, 2009. (Docket No. 10). Plaintiff filed a supporting Brief on October 2, 2009. (Docket No. 14). The Commissioner filed a Brief in opposition on December 17, 2009. (Docket No. 18).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons that follow, it is respectfully recommended that the

---

[1] Citations to "R" refer to the Administrative Transcript. (Docket No. 8).
[2] Plaintiff was represented by Ms. Susan Bosworth-Quinlan (R. at 435), a paralegal (R. at 17). Ms. Bosworth-Quinlan and Plaintiff's attorney, Mr. Christopher Cadin, are both employed by the Legal Services of Central New York (R. at 10-17); Plaintiff's Brief.
[3] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for further proceedings.

### III.     Discussion

#### A.     Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that

which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[4] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

---

[4]The five-step process is detailed as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

**1.  The Commissioner's Decision**

The ALJ made the following findings with regard to factual information as well as the five-step process set forth above: at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity as of her application date, June 9, 2005 (R. at 28). At step two, the ALJ found Plaintiff's generalized anxiety disorder to be her sole severe impairment. Id. Plaintiff's asthma, back pain, and neck pain were all found to be non-severe impairments (R. at 28-29). At step three, the ALJ found that Plaintiff "d[id] not have an impairment or combination of impairments that me[t] or medically equal[ed] one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (R. at 30). The ALJ then determined that Plaintiff "ha[d] the residual functional capacity to perform a full range of work at all exertional levels in a job that d[id] not require working closely with other people and a job with simple tasks" (R. at 31). Plaintiff's "statements

concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely credible" (R. at 33). Based on Medical-Vocational Guidelines Rule 204.00,[5] as well as the dictionary of occupational titles ("DOT"),[6] the ALJ found that positions existed, in significant numbers in the national economy, that Plaintiff could perform (R. at 35-36). Ultimately, the ALJ found that Plaintiff was not under a disability at any time from the date her application was filed through the date of his decision (R. at 36).

### 2. Plaintiff's Claims:

Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor made in accordance with the applicable legal standards. Specifically, Plaintiff argues that a) the ALJ erred in evaluating the opinions from her treating psychiatric sources; b) the physical portion of the residual functional capacity ("RFC") is not supported by substantial evidence; and c) the ALJ erred at step five of the sequential evaluation.

### a) The ALJ Erred in Evaluating the Opinions from Family Counseling Services

Plaintiff argues that the ALJ erred in evaluating the opinions from Plaintiff's sources at Family Counseling Services ("FCS"). Plaintiff's Brief, pp. 23-25.

Plaintiff began counseling with social worker, Mr. Jason Keicher, at FCS in May 2004 (R. at 231). It appears that Mr. Keicher was originally supervised by Dr. Mary Hartshorn (R. at 151, 166, 178, 353), and later by Dr. Naiyar Zaman (R. at 357, 359,

---

[5] According to Rule 204.00, "an impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse." 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 204.00.
[6] The ALJ found that Plaintiff "would likely be able to perform . . . the job of a sack repairer (DOT 782.687-046), a nut setter (DOT 521.687-086) and an addresser (DOT 209.587-010)" (R. at 36).

378). However, it does not appear that these physicians had a treating relationship, or even met, with Plaintiff. Plaintiff continued to see Mr. Keicher on a regular basis through July 2005, but the relationship became less regular and Plaintiff was ultimately discharged in July 2006 due to lack of contact (R. at 360-63). Plaintiff reinitiated treatment at FCS with Mr. Keicher, in October 2006 (R. at 370-71), but was discharged again in April 2007 due to lack of contact (R. at 379-81). Although the record does not contain treatment notes from this time period, Plaintiff apparently returned to FCS in May 2007, and began treatment with social worker, Mr. Hans Bump (R. at 434).[7]

      The ALJ was able to review two assessments from Mr. Keicher of Plaintiff's ability to function despite her impairments.  The first report was completed on July 11, 2005, and later signed by Dr. Hartshorn on July 28, 2005 (R. at 226-36) [hereinafter July 2005 report]. Mr. Keicher noted that Plaintiff "present[ed] with accelerated speech [and] racing thoughts" (R. at 231). Plaintiff also "present[ed] w[ith] anxious mood [and] congruent affect." Id. Mr. Keicher opined that Plaintiff "struggle[d] with her anxiety [and] the impact on her behaviors. [She] further struggle[d] with exercising appropriate insight while experiencing intense anxiety" (R. at 232). Mr. Keicher found that Plaintiff was unable to handle any payment benefits (R. at 233). He further noted that Plaintiff's ability to sustain concentration and persistence was limited, explaining that her "anxiety . . . may lead to difficulty sustaining concentration [at a] high pace of work" (R. at 234). He also found that Plaintiff was limited in social interaction, explaining that her "anxiety may limit [her] willingness to engage in social interactions with others." Id.

---

[7] A medical assessment completed by Mr. Bump on September 23, 2008, was submitted to the Appeals Council (R. at 9, 433-34). In the report, Mr. Bump stated that he began treating Plaintiff on May 31, 2007 (R. at 433). No treatment notes were submitted.

Mr. Keicher completed a second assessment on May 30, 2007 (R. at 421-26) [hereinafter May 2007 report]. This report was also signed by a nurse practitioner, Ms. Elizabeth Finn, and Dr. Zaman (R. at 426). Mr. Keicher opined that Plaintiff experienced anxiety and panic attacks "when attempting to engage in social interactions" (R. at 422). Mr. Keicher found that Plaintiff was restricted in the following daily activities: shopping, using public transportation, as well as initiating and participating in activities independent of supervision and direction (R. at 423). Mr. Keicher further found that Plaintiff had difficulties in maintaining social functioning, including: getting along with family, friends, and neighbors; showing consideration for others; cooperating with others; responding to those in authority; responding without fear to strangers; and holding a job. Id. He also opined that Plaintiff experienced repeated episodes of decompensation, each of extended duration, including: an inability to accept supervision appropriately, poor attendance, and poor decision making (R. at 425). Mr. Keicher did not identify any difficulties in task performance and concentration (R. at 424). Finally, Mr. Keicher noted that he "[wa]s unable to comment on [Plaintiff's] current mental health status due to [her] lack of involvement in current counseling" (R. at 426).[8]

Although both the July 2005 report and May 2007 report were co-signed by physicians (R. at 236, 426), the Court could find no evidence that either Dr. Hartshorn or Dr. Zaman had a treating relationship with Plaintiff. Thus, the Court will not engage in an analysis of whether those opinions were entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2) (setting forth the requirements for when a treating physician's opinion is entitled to controlling weight). ALJs are instructed to consider the following factors when

---

[8] Plaintiff had been discharged from FCS the previous month due to lack of contact and had not yet reinitiated treatment with Mr. Bump (R. at 379-81).

evaluating medical opinions from non-treating "acceptable medical sources," as well as opinions from "other sources," like Mr. Keicher: 1) whether the source examined the claimant; 2) whether the source had a treating relationship with the claimant; 3) the supportability of the opinions; 4) the consistency of the opinions with the record as a whole; 5) whether the source is a specialist; 6) and other factors. 20 C.F.R. § 404.1527(d)(1)-(6); Social Security Ruling 06-03p, 2006 WL 2329939, at *4-5 (S.S.A) (hereinafter SSR 06-3p) (explaining that the factors apply to the consideration of opinions from "other sources").

The ALJ failed to weigh, or even discuss, the July 2005 report. As for the May 2007 report, he "viewed [it] with some skepticism" and afforded it only "some evidentiary weight" (R. at 34). The Court finds that the ALJ failed to adequately evaluate Mr. Keicher's opinions. Moreover, the ALJ's findings regarding Plaintiff's mental impairments are further undermined by new evidence submitted to the Appeals Council. Thus, the Court recommends remand to allow the ALJ an opportunity to properly assess Mr. Keicher's opinions as well as to evaluate the new evidence in determining Plaintiff's mental limitations.

At the outset, the Court finds that the ALJ's failure to weigh or discuss Mr. Keicher's July 2005 report is reason enough to remand. See Silberman v. Astrue, 2009 WL 2778245, at *2 (S.D.N.Y. Sept. 1, 2009) (internal citations removed) ("[T]he ALJ['s] fail[ure] to explain the weight accorded to the testimony of Plaintiff's treating therapist . . is independently grounds for remand."); Carlantone v. Astrue, 2009 WL 2043888, at *5 (S.D.N.Y. July 14, 2009) (finding error where the ALJ failed to weigh two chiropractors' opinions); see also Lopez v. Sec'y of Dep't of Health & Human Sevs., 728 F.2d 148,

150-51 (2d Cir. 1984) (the ALJ has an obligation "to consider relevant and probative evidence which is available to him").

The ALJ also erred in evaluating the May 2007 report. When considering this assessment, the ALJ noted that

> [t]he report indicates that [Plaintiff] ha[d] engaged in weekly individual cognitive behavioral therapy but has declined referral to receive medication to manage her symptoms. Treatment notes reflect that [Plaintiff's] attendance has been sporadic (Exhibit 14F). For example, [Plaintiff] was evaluated on September 15, 2005 and not seen in treatment again until December 10, 2005. Thereafter she was next seen on March 8, 2006, with another gap in history reflecting services on June 15, 2006. [Plaintiff] was discharged from services thereafter due to loss of agency contact. She was screened and readmitted for treatment in September/October 2006. A treatment plan update did not take place until January 30, 2007, after which [Plaintiff] was again discharged due to loss of contact with agency on April 2, 2007

(R. at 34). Thus, the ALJ considered the frequency of treatment factor, and discounted the May 2007 report on that basis. However, the ALJ's analysis is not supported by the record. From July 2005 through April 2007, when Plaintiff was discharged from FCS, her relationship with Mr. Keicher could accurately be described as sporadic (R. at 351-381). However, Plaintiff met with Mr. Keicher more than thirty times between June 2004 and July 2005 (R. at 150-225). Thus, although after July 2005, Plaintiff's relationship with Mr. Keicher was somewhat limited, for over a year a frequent treating relationship existed. Indeed, the fact that Mr. Keicher had such a frequent treating relationship with Plaintiff should have weighed in his favor.

The ALJ also noted Mr. Keicher's comment that he was unable to assess Plaintiff's current functioning, in May 2007, "due to [her] lack of involvement in current counseling" (R. at 34, 426). The ALJ then went on to find that "[a]s such, this

assessment [wa]s only provided . . . some evidentiary weight" (R. at 34). Thus, the ALJ appears to have discounted the May 2007 report because Mr. Keicher stated that he could not assess Plaintiff's current functioning in May 2007.[9] The Court acknowledges that Mr. Keicher was not seeing Plaintiff in May 2007, and by his own admission, his opinions were likely not probative for that time period. However, Plaintiff alleged a disability as of May 1, 2004 (R. at 37). Thus, the therapist's findings were certainly relevant for the time period in which Plaintiff had an ongoing and frequent treating relationship with Mr. Keicher; specifically, June 2004 through July 2005. The ALJ failed to consider the report's relevance for this time period.

      The ALJ also appears to have discounted the May 2007 report because of Plaintiff's noncompliance with medications (R. at 34). ALJs are permitted to consider whether a claimant has refused a prescribed treatment in determining her disability. 20 C.F.R. § 416.930(b). However, ALJs are further instructed to consider a claimant's mental limitations in determining whether she had an "acceptable reason for failure to follow prescribed treatment." § 416.930(c). Here, Mr. Keicher repeatedly noted feelings of paranoia surrounding Plaintiff's medications. See (R. at 182) (Plaintiff stated in therapy that while she understood the benefits of taking medication, she had "paranoid beliefs that once she t[ook] the medications [they] will be recalled, and possibly cause her death."); (R. at 181) (Plaintiff stated in therapy that she was not taking her

---

[9] It is possible that the ALJ was also discounting the opinion because it was retrospective. However, that too would be error. The Second Circuit has held that a treating physician's retrospective opinion "is entitled to controlling weight unless it is contradicted by other medical evidence or 'overwhelmingly compelling' non-medical evidence." Byam v. Barnhart, 336 F.3d 172, 183 (2d Cir. 2003) (internal citations removed). Although Mr. Keicher was not a treating physician, given the Second Circuit law on retrospective opinions for treating physicians, the Court can find no reason that a therapist's opinion can be properly discounted solely on the basis that it is retrospective. See Caplan v. Astrue, 2009 WL 691922, at *7 (E.D.N.Y. Mar. 15, 2009) (finding error where the ALJ afforded no weight to the retrospective opinions of a treating physician and social worker).

medications because "there [we]re too many 'what ifs.'"); (R. at 150, 165, 177) (At several treatment plan reviews, Mr. Keicher noted that Plaintiff was not adherent with medications because of paranoid feelings regarding her medications). Furthermore, Mr. Keicher repeatedly indicated that he was working with Plaintiff to relieve the anxiety surrounding her medications (R. at 150, 166, 353). Thus, if the ALJ discounted Mr. Keicher's opinion on this basis, he failed to also consider whether Plaintiff's mental limitations, and specifically her paranoia concerning her medications, resulted in "an acceptable reason for failure to" take her medications. 20 C.F.R. § 416.930(c).

The ALJ's failure to engage in any meaningful analysis of the factors in evaluating Mr. Keicher's opinions constitutes error worthy of remand. See Canales v. Comm'r of Soc. Sec., 2010 WL 1140861, at *8 (E.D.N.Y. Mar. 26, 2010) (remanding so the ALJ could "address what weight, if any, is to be given to [social worker]'s opinions, and provide an explanation of that decision that complies with the requirements of SSR 06-03p"); Mongeur v. Heckler, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983) (explaining that even though the opinion of an "other" medical source is not entitled to controlling weight, where he treated Plaintiff "on a regular basis, [his] opinion is entitled to some extra consideration").

The ALJ's findings regarding Plaintiff's mental impairments are further undermined by evidence submitted to the Appeals Council from FCS. This evidence includes four employment questionnaires, likely completed by Mr. Keicher (R. at 427-30),[10] and one panic attack questionnaire, completed by Mr. Bump (R. at 433-34).

---

[10] Of those four questionnaires, Mr. Keicher's signature was legible on only one (R. at 427-31). However, all the reports were from FCS. Because Mr. Keicher was Plaintiff's sole treating therapist at FCS during

These reports became part of the record when the Appeals Council denied review. Perez v. Chater, 77 F.3d 41, 45-46 (2d Cir.1996). The role of the Court is then to review the record, including the new evidence, to "determine, as in every case, whether there is substantial evidence to support the decision of the Secretary." Id. at 46.

The employment questionnaires were completed between June 2004 and December 2005 (R. at 427-30). In the employment reports, Mr. Keicher found the following exposures were not recommended: noise; a high rate of working speed; male supervision; responsibility for decisions; responsibility for others; working around or with people; and public contact. Id.

Mr. Bump completed the panic attack questionnaire on September 23, 2008 (R. at 433-34) [hereinafter September 2008 report]. Mr. Bump opined that Plaintiff experienced "moderate/severe" panic attacks averaging twice a week (R. at 433-34). Mr. Bump identified the following signs and symptoms associated with Plaintiff's panic attacks: intense fear or discomfort; intense apprehension; sense of impending doom; nausea or abdominal distress; fear of losing control or going crazy; and an "inability to go out alone" (R. at 433). Mr. Bump noted that with therapy, the frequency of her panic attacks had lessened, but she remained unable "to work due to [an] inability to adequately manage" (R. at 434).

Thus, the evidence submitted by both Mr. Keicher and Mr. Bump, indicate mental limitations beyond those found in the RFC.[11] Therefore, the Court recommends remand to allow the ALJ an opportunity to properly weigh Mr. Keicher's July 2005 and May 2007

---

the time period when the reports were created, from June 2004 through December 2005, it is likely he completed the remaining three questionnaires.

[11] The ALJ limited Plaintiff to "a job that d[id] not require working closely with other people and . . . simple tasks" (R. at 31).

reports in accordance with SSR 06-03p and 20 C.F.R. § 404.1527(d)(1)-(6). Furthermore, remand will give the ALJ an opportunity to evaluate the new evidence from Mr. Keicher and Mr. Bump when evaluating Plaintiff's mental impairments. Finally, on remand, the ALJ should clarify whether Plaintiff had a treating relationship with either Dr. Hartshorn or Dr. Zaman. If a treating relationship exists, the July 2005 report and May 2007 reports may be entitled to controlling weight. See Santiago v. Barnhart, 441 F.Supp.2d 620, 628 (S.D.N.Y. 2006) (remanding, in part, because "there is [no] legal principle which states that a doctor must personally write out a report that he signs for it to be afforded weight"); Keith v. Astrue, 553 F.Supp.2d 291, 301 (W.D.N.Y. 2008) (remanding, in part, because the ALJ discounted notes written by an "other source," but were signed by a treating physician).

### b) The Exertional Portion of the RFC is Supported by Substantial Evidence

Plaintiff argues that the record contained so little evidence concerning Plaintiff's physical limitations, that the exertional portion of the RFC was not supported by substantial evidence. Plaintiff's Brief, pp. 11-13

An individual's "residual functional capacity is the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). In order to determine a claimant's RFC, the ALJ must assess "all of the relevant medical and other evidence." § 404.1545(a)(3). Also, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work…." "on a regular and continuing basis." §§ 404.1545(a)(4), (b). A regular and continuing basis is defined as "8 hours a day, for five

days a week, or an equivalent work schedule." Social Security Ruling 96-8p, 1996 WL 374184, at *1 (S.S.A.).

Plaintiff argues that the ALJ's exertional findings in the RFC were not supported by substantial evidence. Plaintiff's Brief, pp. 11-13. Exertional limitations include "sitting, standing, walking, lifting, carrying, pushing, and pulling." 20 C.F.R. § 404.1569a(b). Examples of nonexertional impairments include

> difficulty functioning because you are nervous, anxious, or depressed; . . .difficulty maintaining attention or concentrating; . . . difficulty understanding or remembering detailed instructions; . . . difficulty in seeing or hearing; . . . difficulty tolerating some physical feature(s) of certain work settings, e.g., you cannot tolerate dust or fumes; or . . .  difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.

20 C.F.R. § 404.1569a(c)(i)-(vi).

The ALJ found that Plaintiff was able "to perform a full range of work at all exertional levels" (R. at 31). Contrary to Plaintiff's argument, the ALJ's finding is supported by substantial evidence.

Although the record contains a few complaints of asthma, neck pain, back pain, abdominal pain, and knee pain, there is little evidence supporting Plaintiff's contention that these impairments limited her ability to work. The record also fails to contain evidence that Plaintiff sought further medical attention for these impairments, beyond the few complaints she made to treating sources.

Substantial medical evidence supports the ALJ's finding that Plaintiff had no physical limitations. Plaintiff underwent a physical consultative examination with Dr. Kalyani Ganish, on July 15, 2005, at the request of the SSA (R. at 241-44). Dr. Ganesh diagnosed Plaintiff with a history of asthma, and found "[n]o physical limitation noted to

sitting, standing, walking, or the use of upper extremities" (R. at 243). The RFC is further supported by the SSA disability analyst's opinion (R. at 250). On July 26, 2005, the analyst reviewed Plaintiff's records and found no more than a slight abnormality in Plaintiff's physical functioning (R. at 250).

Therefore, the Court finds that substantial evidence supports the physical portion of the RFC. However, on remand, the ALJ must necessarily re-evaluate all aspects of the RFC.

### c)  The ALJ's Step Five Findings are Necessarily Flawed

Plaintiff's final argument is that the ALJ erred in relying upon the Medical-Vocational Guidelines when finding Plaintiff not disabled. Plaintiff's Brief, pp. 13-23.

The Court has recommended remand for failure to properly evaluate Mr. Keicher's opinions. Therefore, the ALJ's findings at step five of the sequential evaluation are necessarily flawed.

### 3.  Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Based on the foregoing the Court recommends remand for failure to properly evaluate the opinions from Plaintiff's treating therapist, Mr. Keicher.

## IV.   Conclusion

For the foregoing reasons, the Court finds that a remand is necessary and warranted. Accordingly, it is respectfully recommended that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

_____
Victor E. Bianchini
United States Magistrate Judge

DATED:   Syracuse, New York
         June 8 , 2010

**ORDER**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);  *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);  *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Syracuse, New York

DATED:    June 8, 2010